**The GOODYEAR TIRE & RUBBER COMPANY, Plaintiff–Appellant,**

v.

**The HERCULES TIRE & RUBBER COMPANY, INC., Defendant Cross–Appellant.**

**Nos. 97–1199, 97–1223.**

United States Court of Appeals, Federal Circuit.

Nov. 10, 1998.

---

Charles B. Park, III, Bell, Seltzer, Park, & Gibson, Charlotte, North Carolina, argued for plaintiff-appellant. With him on the brief were Dickson M. Lupo and Bruce J. Rose.

Marshall A. Bennett, Jr., Marshall & Melhorn, Toledo, Ohio, argued for defendant cross-appellant. With him on the brief was Donald A. Schurr. Also on the brief was Richard M. Kerger, Kerger & Kerger, Toledo, Ohio. Of counsel was Steven J. Funk, Marshall & Melhorn.

Before NEWMAN, PLAGER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The Goodyear Tire & Rubber Company appeals the decision of the United States District Court for the Northern District of Ohio, holding that the "Power Trac" retread design of the Hercules Tire & Rubber Company does not infringe Goodyear's United States Design Patent No. 349,080 (the '080 patent).[1] Hercules cross appeals the district

---

1. *Goodyear Tire & Rubber Co. v. Hercules Tire &* *Rubber Co.*, No. 5:95 CV 1148 (N.D.Ohio Dec. 10,

court's determination that the '080 patent is not unenforceable for inequitable conduct. We affirm the decisions of the district court.

## BACKGROUND

Goodyear's '080 patent, inventor Robert P. Loser, is for a design of a tire tread, as illustrated in Fig. 4 of the '080 patent:

Hercules makes a tire retread that it calls the Power Trac, of the following design:

Upon Goodyear's suit for patent infringement, Hercules raised the defenses of noninfringement, invalidity, and unenforceability. The district court determined that Goodyear had not proven infringement, either literal or under the doctrine of equivalents, and that

Hercules had not proven that the '080 patent was invalid or unenforceable. Only the issues of noninfringement and enforceability are appealed.

Goodyear states that the district court erred in its claim construction and its in-

1996).

fringement analysis. Goodyear refers to the five years of design work, testing, and development that led to this highly successful new tire, having the model designation G362. Goodyear complains that Hercules, by making what Goodyear describes as minor changes in insubstantial aspects of the design, could reap the benefits of that work and rapidly enter this market without development cost. Hercules' witnesses readily conceded that their purpose was to emulate the basic appearance of the Goodyear G362 tire, albeit while avoiding infringement.

## I

## CLAIM CONSTRUCTION

■ Goodyear states that the district court failed to "pronounce the meaning of the claim" of the '080 patent, citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981, 34 USPQ2d 1321, 1331 (Fed.Cir.1995) (in banc) ("When, after considering the extrinsic evidence, the court finally arrives at an understanding of the language as used in the patent and prosecution history, the court must then pronounce as a matter of law the meaning of that language."), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996), and this court's ruling in *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577, 36 USPQ2d 1417, 1420 (Fed.Cir. 1995) that *Markman* applies to design patents as well as utility patents.

The requirement that the court construe disputed claim language, as applied to design patents, must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words:

> 37 C.F.R. § 1.153(a). The title of the design must designate the particular article. No description, other than a reference to the drawing, is ordinarily required. The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described. More than one claim is neither required nor permitted.

The formal claim of the '080 patent is as follows:

The ornamental design for a tire tread, as shown and described. The drawing of the patent is depicted in six Figures, which show perspective, elevation, and fragmentary views of the two embodiments of the tread design. During prosecution, at the examiner's suggestion, text was added to the '080 patent to state that the "tread pattern is understood to be repeated uniformly throughout the circumference of both embodiments of the tire tread, and the broken line showing of the tire sidewall in all views of the drawing is for illustrative purposes only and forms no part of the design claimed." No other words describe the design.

The error in claim construction that Goodyear ascribes to the district court concerns the word "tire." Goodyear states that the district court erroneously construed "tire" as meaning truck tire. Goodyear states that "tire" is correctly construed as meaning any kind of tire, for the '080 patent makes no mention of any particular kind of tire or otherwise limits the use of the tire tread design. Goodyear states that by construing the word "tire" as meaning truck tire, the court erroneously selected a purchaser of truck tires as the "ordinary observer" from whose viewpoint infringement is determined. Goodyear argues that a purchaser of tires in general is a less discriminating and thus more ordinary observer than a purchaser of truck tires, and that the district court was led, by this error in claim construction, into the erroneous finding of non-infringement.

We agree that the '080 patent is not limited to truck tires, for there is no such limitation on the face of the patent, or arising from the prosecution history. However, it is not a matter of claim construction to determine the qualifications of the observer through whose eyes infringement is determined. As we shall discuss, deception concerning the patented design is determined from the viewpoint of the person who is the ordinary purchaser of the article charged to be an infringement.

## II

## INFRINGEMENT

■ Infringement of a design patent is the unauthorized manufacture, use, or sale of

the article embodying the patented design or any colorable imitation thereof:

### 35 U.S.C. § 289. Additional remedy for infringement.

Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner. . . .

In providing for infringement by "colorable imitation," the statute recognizes that minor changes in a design are often readily made without changing its overall appearance. The measure of infringement of a design patent is deception of the ordinary observer, when such person gives the design the attention usually given by a purchaser of the item bearing the design:

We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). Differences in the design are relevant, as well as similarities, in determining whether such person would be deceived. *FMC Corp. v. Hennessy Industries, Inc.,* 836 F.2d 521, 527–28, 5 USPQ2d 1272, 1277 (Fed.Cir.1987).

■ The district court found that the ordinary observer of the accused tire tread was a prospective purchaser of truck tires, that is, a trucker or fleet operator. Goodyear argues that it was incorrect to select a purchaser of truck tires as the ordinary observer, when the patent is not limited to truck tires. Goodyear states that this error occurred because the court used Goodyear's commercial embodiment as the basis for defining the ordinary observer, and that the patent is not limited to any particular commercial embodiment.

Indeed, the district court did give weight to the fact that both the accused tire and Goodyear's commercial embodiment are truck tires. The court explained that if the '080 design were used more broadly than on truck tires, the court would have considered a broader definition of the ordinary purchaser. We discern no clear error in the district court's reasoning, for it would have sufficed to have considered only the actual use of the accused infringing tread as the field of purchase by the ordinary observer. *Gorham* counsels against measuring the similarity of designs from the viewpoint of experts in design ("Experts, therefore, are not the persons to be deceived."). 81 U.S. (14 Wall.) at 528. Rather, *Gorham* states, the similarity of designs should be measured through

the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give. It is persons of the latter class who are the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be, . . . that advantage of a market which the patent was granted to secure is destroyed.

*Id.* The standard is whether such a purchaser would be misled, by the design similarity imparted to the article by the copier, to think that it is the patentee's design that is being purchased. Thus the focus is on the actual product that is presented for purchase, and the ordinary purchaser of that product. The accused tire, the Hercules Power Trac, is a truck tire. The district court correctly invoked the ordinary trucker or fleet operator who purchases truck tires, as the person from whose viewpoint deceptive similarity to the '080 design is determined.

■ The district court concluded that the similarity and difference in overall appearance between the accused Power Trac design and the '080 design could best be determined by "a comparison of some of the features which give rise to those appearances." The court explained that:

For example, the shoulder design of the Power Trac does not contain the simple ornamental circumferential groove found in the '080 design, the block shapes in the Power Trac are rectangular rather than square, the shoulder ribs of the Hercules tire are larger, and the groove is cleaner or less busy in the Power Trac than in the '080 design.

The court concluded that taken together for their overall visual effect, the differences between the patented and accused designs were such that a "typical tire or retread purchaser (or, indeed, this court)" would not find the designs, as a whole, to be substantially similar.

 Infringement of a design patent requires that the designs have the same general visual appearance, such that it is likely that the purchaser would be deceived into confusing the design of the accused article with the patented design. The accused design must also contain substantially the same points of novelty that distinguished the patented design from the prior art. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125, 25 USPQ2d 1913, 1918 (Fed.Cir.1993); *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1187, 5 USPQ2d 1625, 1625 (Fed.Cir.1988); *Litton Systems, Inc. v. Whirlpool Corp.*, 728

F.2d 1423, 1444, 221 USPQ 97, 109 (Fed.Cir. 1984). Similarity of overall appearance is an insufficient basis for a finding of infringement, unless the similarity embraces the points of novelty of the patented design. While it is the design as a whole that is patented, *Gorham v. White*, the distinctions from prior designs informs the court's understanding of the patent.

Goodyear argues that the district court gave inadequate weight to the clear striking similarity of the designs as a whole, and unduly emphasized minor individual discrepancies. Goodyear argues that any differences between the accused and the patented design do not relate to the novel features, that minor differences do not negate infringement, citing *Gorham*, 81 U.S. (14 Wall.) at 530, and that all of the points of novelty need not be appropriated when the effect of the design as a whole is substantially the same.

 The points of novelty relate to differences from prior designs, and are usually determinable based on the prosecution history. During prosecution of the '080 patent Goodyear cited twelve tread designs to the Patent and Trademark Office. The examiner relied on the following four tread designs:

European Pat. No.
0,075,760

AURORA
R800 (P)
TL-P-S8-RP-HR

YOKOHAMA
RY215 (P)
TL-TT-P-S8-RP-HR

YOKOHAMA
SUPER VAN Y358 (P)
TL-P-S8-RP-HR

To distinguish its design from the prior art, Goodyear identified nine features of the '080 tread, viewed separately or in combination. Goodyear stated that the blocks in the '080 tread are more square, whereas those of the prior art are elongated into rectangles. Goodyear stated that the side edges of the '080 blocks are straight and that the overall appearance of the '080 blocks is that

of a double T or I, differing from the Z, S or rib-shapes in the prior art. Goodyear pointed to the distinctive appearance of the complementary notches on the inside edges of the shoulder ribs and at the mid-block position at the center blocks, the distinctive shape of the offsets on the circumferential grooves, and the distinctive flare of the later-

al grooves between the blocks. Goodyear stated that the '080 design has differences in the orientation of the lateral grooves with offset pattern, in the designs along the opposing edges of the solid shoulders, and in the narrow circumferential or "decoupling" grooves in the shoulder ribs. Goodyear argued that "this is a crowded art where small differences can result in recognized overall appearance which is distinguishable because the general theme of the two block pattern is so popular."

Not all of these features of the '080 tread are present in the accused Hercules tread. Goodyear argued at trial that the major visual components of the '080 tire are "the combination of a four-rib tread design wherein (1) the four circumferential ribs are separated by three substantially wide circumferential grooves, (2) the two circumferential shoulder ribs are solid, and (3) the remaining two circumferential ribs consist of a series of tread blocks shaped so that each is separated from the other by lateral grooves which flare outwardly." Goodyear argued at trial that this combination of dominant features was the basis of the grant of the patent, that they represent the points of novelty, and that they are found in the Hercules tread.

The district court rejected Goodyear's view of the points of novelty as overly broad, since all were found in the prior art. Instead, the court adopted the same points of novelty that it had relied on in determining that the '080 patent was not invalid for obviousness. These were the square shapes of the blocks forming the inner circumferential ribs, the full and half offsets in the shoulders, and the narrow decoupling grooves in the shoulders. The district court relied on four prior art designs, as follows:

U.S. Patent Des. 294,814

U.S. Patent Des. 304,918

U.S. Patent Des. 253,643

U.S. Patent Des. 245,327

Goodyear argues that none of these tread designs shows the dominant features, in combination, of the '080 tread, as Goodyear defines them, whereas the Hercules Power Trac embodies all of these features.

Hercules, in turn, stresses its differences from the '080 design, emphasizing the points of novelty of the '080 design and the arguments Goodyear presented in support of patentability. Hercules emphasizes that it does not have the two "decoupling" circumferential grooves in the shoulder ribs. Hercules points to changes in the shoulder rib and the outside shoulder, stating that its shoulder ribs are wider than those of the '080 design. Hercules describes the '080 block as a "short, stubby block that is almost square," while that of the Power Trac is an elongated rectangle, and that the Power Trac block has a "more pronounced zigzag shape." Hercules points to the reduced number of notches in the outside shoulder of the Power Trac and the different size and shape of the notches. Hercules states that its grooves separating the ribs are "cleaner and wider" than those of the '080 design. Hercules also refers to the different shape of the "siping," which is the groove line inside the blocks. Hercules states that overall it simplified the appearance so that the design is less busy.

Although Hercules does not deny that it intended to appropriate the general appearance of the Goodyear tire, Hercules argues that it made changes sufficient to avoid infringement. The district court agreed. The court recognized that the art was crowded, and held the '080 design to a narrow scope. The court identified prior art in which each of the Goodyear points of novelty could be found. For example, several patents showed blocks in the center ribs of similar shape and orientation to that of the Hercules tread. The court found that the lateral grooves flaring at the end in the '080 design were similar to those of the Michelin XDHT. The court traced the solid shoulder ribs notched on each side, as in the '080 design, to several prior treads.

The district court also found that the shoulder design of the Hercules Power Trac does not contain the narrow circumferential (decoupling) groove of the '080 design, and

described this groove as "one of the most significant factors contributing to the '080's novel or non-obvious appearance." It was acknowledged that such grooves were known in the prior art for use in truck steer tires as well as for tires in general, but Goodyear had pointed out during prosecution that they were not previously used in truck drive tires. Although Goodyear does not now use this groove in its G362 tire, and states that it is an immaterial part of the overall design, the court did not clearly err in determining the decoupling groove to be a significant point of novelty.

The district court also gave weight to the distinction wherein the shoulder ribs of the Power Trac are larger and the groove is "cleaner or less busy" than in the '080 design. The court also found that the block shapes in the Power Trac are rectangular, not square; that the outward flare on the lateral grooves is of somewhat different shape in the Power Trac; and that the Power Trac does not have the distinctive pattern of offsets of the '080 design.

Goodyear states that the district court clearly erred in finding, as the essential points of novelty of the '080 design, the very minor design aspects of the narrow decoupling grooves in the shoulder ribs, the minute details of the square block pattern, and the offsets on the shoulders. Goodyear states that these aspects are not points of novelty in the '080 design, but routine elements of tire treads. Thus Goodyear argues that erroneous designation of the points of novelty contributed to the district court's erroneous judgment of noninfringement.

We conclude, however, that the district court did not clearly err in giving weight to those aspects of the '080 tread that were necessary design aspects in sustaining the validity of the patent, some of which Goodyear had identified as points of novelty during patent prosecution.

Since several significant points of novelty of the '080 design do not appear in the accused design, the district court did not clearly err in finding that the "points of novelty" test was not met. Although there are apparent similarities in the overall ap-

pearance of the designs, we affirm the conclusion that the trucker as ordinary observer would notice the differences in the designs and recognize that they are not colorably the same. The district court's factual finding of non-infringement is not clearly in error, with carefully reasoned premises and conclusions, based on correct law.

The judgment of non-infringement is affirmed.

## III

### INEQUITABLE CONDUCT

 Hercules cross-appeals the district court's determination that the '080 patent is not unenforceable based on the charge that Goodyear engaged in inequitable conduct in the Patent and Trademark Office. A patent may be unenforceable due to inequitable conduct if the applicant does not disclose material information to the PTO or submits false material information, with an intent to deceive or mislead the examiner. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988). Both materiality and culpable intent are essential factual predicates of inequitable conduct, and each must be proved by clear and convincing evidence. *Id.* When both materiality and intent are established, the decision of whether there was inequitable conduct is committed to the discretion of the trial court, and is reviewed accordingly. *Id.* at 876, 9 USPQ2d at 1392.

 Hercules based its charge on Goodyear's failure to tell the patent examiner of the Michelin XDHT tread design. The XDHT was a truck tire, and the '080 design inventor, Robert Loser, readily admitted that he was aware of it. Hercules characterizes the Michelin XDHT as "the one easily accessible reference that clearly includes flares at the lateral grooves between the blocks," a feature of the Goodyear design. Goodyear responds that other references before the examiner, including the tread designs that the examiner selected from the 1989 *Tread Design Guide*, constitute as close or closer prior art than the XDHT tire, which is also pictured in the 1989 *Tread Design Guide*. Among the twelve references that Goodyear had submitted to the PTO was a Michelin design patent that Mr. Loser testified (and Hercules disputed) was closer to the '080 design than that of the Michelin XDHT. Goodyear states that the Michelin XDHT design was at best cumulative, and that it was in fact before the examiner.

The district court found that the XDHT design was material, based partly on inventor Loser's testimony that the XDHT tire was the market leader in truck drive tires at the time of his development of the '080 tread, and that his purpose was to design a tire to compete with the XDHT. The court dismissed Goodyear's argument that the *Tread Design Guide* was a disclosure to the PTO of the XDHT design, for that design was one of twenty tires on one page of that 256–page reference. However, assessing the testimony that no information was deliberately withheld during prosecution of the patent application, the district court also found that even if Mr. Loser had been negligent in not specifically directing the Goodyear patent attorney's attention to the XDHT tire, there was no evidence of an intent, on the part of either the inventor or the attorney, to deceive the examiner.

 The trial court is in the best position to weigh evidence that involves credibility determinations, and such determinations are accorded substantial deference on appellate review. *See Refac Int'l, Ltd. v. Lotus Development Corp.*, 81 F.3d 1576, 1582, 38 USPQ2d 1665, 1670 (Fed.Cir.1996). No clear error has been shown in the court's findings, for we have not been directed to clear and convincing evidence of intent to mislead or deceive the examiner during prosecution of the patent application. The decision that the '080 patent is not unenforceable on the ground of inequitable conduct is affirmed.

### Costs

No costs.

*AFFIRMED.*