NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1185, -1188

ANHEUSER-BUSCH COMPANIES, INC.,
METAL CONTAINER CORPORATION,
and ANHEUSER-BUSCH INC.,

Plaintiffs-Cross Appellants,

v.

CROWN CORK & SEAL TECHNOLOGIES CORPORATION
and CROWN CORK & SEAL CO. (USA), INC.,

Defendants-Appellants.

_____

DECIDED:  December 23, 2004

_____

Before MAYER, Chief Judge, LOURIE, and DYK, Circuit Judges.

LOURIE, Circuit Judge.

Crown Cork & Seal Technologies Corp. and Crown Cork & Seal Co. (USA), Inc. (collectively "Crown") appeal from the decision of the United States District Court for the Western District of Wisconsin granting summary judgment of noninfringement of United States Patent 6,065,634 in favor of Anheuser-Busch Companies, Inc., Metal Container Corp., and Anheuser-Busch, Inc. (collectively "Anheuser").  Anheuser-Busch Co. et al. v. Crown Cork & Seal Tech. Corp. and Crown Cork & Seal Co. (USA), Inc., No. 03-CV-137-S (W.D. Wis. Dec. 11, 2003) ("Judgment").  Anheuser cross-appeals from the decision of the district court granting summary judgment of noninfringement of United States Patent D387,987 in favor of Crown.  Because we agree that Crown does not

infringe the '987 patent, we <u>affirm</u> the court's summary judgment of noninfringement of that patent. However, because the court erred in its construction of Claim 1 of the '634 patent, we <u>vacate</u> the court's summary judgment of noninfringement of that patent and <u>remand</u> for the court to redetermine whether Anheuser infringes that patent based on our modified claim construction.

BACKGROUND

The technology in this case relates to the geometry of can ends. The geometry of a can end may affect both the strength of the can and the amount of metal used to manufacture the can. Because of the enormous number of cans that are manufactured, a small saving in the amount of metal used per can end may result in significant financial savings to the manufacturer. Crown owns the '634 patent directed to a can end having a chuck wall that is inclined to an axis perpendicular to the central panel of the can end. Figure 4 of the '634 patent, shown below, illustrates a sectioned side view of an embodiment of the claimed can end with a chuck wall (24), a chuck wall angle (C°), and a central panel (26).



FIG. 4

Claim 1, the only independent claim asserted by Crown, reads as follows:

> A can end comprising;
> a peripheral cover hook;
> a chuck wall dependent from an interior of the cover hook;

an outwardly concave annular reinforcing bead extending radially inwards from the chuck wall; and
a central panel supported by an inner portion of the reinforcing bead;
wherein the chuck wall is inclined to an axis perpendicular to the exterior of the central panel at an angle between 40° to 60°, and a concave cross-sectional radius of the reinforcing bead is less than 0.75 mm.

This appeal also involves the ornamental design of can ends. Figures 8 and 9 of the '987 patent, shown below, are the top and side plan views of the claimed design.



FIG. 8    FIG. 9

Cross-appellant Metal Container Corporation, the manufacturer of can ends used by Anheuser-Busch and accused by Crown of infringing the '634 patent, owns the '987 patent and is a co-plaintiff in this action.

In March 2003, Anheuser filed suit against Crown seeking a declaration that its "LOF+" can ends do not infringe the '634 patent. Anheuser's suit also alleged that Crown's "SuperEnd" can ends infringe the '987 patent. Figures 1 and 2 of U.S. Patent D476,889, shown below, disclose the design of SuperEnd. Crown counterclaimed for infringement of its '634 patent and noninfringement of the '987 patent.



Fig.1.       Fig.2.

On the parties' competing motions for summary judgment regarding infringement of the '634 patent, the district court construed claim 1 to require a "flat" chuck wall. Judgment, at slip op. at 11-12. Based on the limitation requiring the chuck wall to be inclined "at an angle," the court reasoned that "only a flat wall would be described as inclining at 'an' angle." Id. at 12. The court explained that a can end with an arcuate chuck wall, such as LOF+, would have an infinite number of angles and would not be described as having "an angle." Id. The court also supported its construction of the term "chuck wall" by finding that the preferred embodiment and drawings only disclosed can ends with flat chuck walls. Id. at 12-13. The court further noted that the single manufacturing method disclosed in the specification would result in a can end with a flat chuck wall. Id. at 13. Finally, the court concluded that the prosecution history did not indicate that the patentee contemplated a nonflat chuck wall. Id. Based on its claim construction, the court then determined that LOF+ did not infringe the '634 patent, either literally or under the doctrine of equivalents. Id. at 13-15.

The district court also addressed the parties' competing motions for summary judgment regarding infringement of the '987 patent. In determining the points of novelty of the '987 patent, the court considered three prior art United States patents: (1) D365,988; (2) 5,711,488; and (3) D382,481. From the prior art, the court discerned

the following three points of novelty: (1) the tab end of the recess is slightly wider relative to the opening end of the recess in the '987 patent than in the prior art; (2) the tab end of the recess is distinctly flattened in the '987 patent, giving the appearance of two distinct corners rather than the continuous arc of the prior art; and (3) the combination of the tab shape and the tab end recess shape leaves greater space between the tab and the recess edge in the '987 patent than in the prior art with similar tab shapes (the '488 and '481 patents). Id. at 18. In concluding that SuperEnd does not infringe the '987 patent, the court found that the overall appearance of SuperEnd was much closer to the prior art design than to the '987 patent's design. Id. at 19.

Crown has timely appealed and Anheuser has timely cross-appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment de novo, reapplying the same standard used by the district court. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is appropriate if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A determination of infringement of a utility patent requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted . . . [and second,] the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en

04-1195, -1188                    -5-

banc) (citations omitted).  Step one, claim construction, is a question of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970- 71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), that we review de novo, Cybor, 138 F.3d at 1456.  Step two, comparison of the claims to the accused device, requires a determination that every claim limitation or its equivalent be found in the accused device.  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997).  That determination is a question of fact.  Bai v. L & L Wings Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

Similarly, whether a design patent is infringed is also determined by first construing the claim to the design and then comparing it to the design of the accused device.  Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).  A design patent only protects the novel, ornamental features of the patented design.  OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405-06 (Fed. Cir. 1997) (citations omitted).  The comparison step of the infringement analysis requires the fact-finder to determine whether the patented design as a whole is substantially similar in appearance to the accused design.  The patented and accused designs do not have to be identical in order for the design patent to infringe.  Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992).

For there to be infringement, the accused design must also contain substantially the same points of novelty that distinguished the patented design from the prior art. Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc., 162 F.3d 1113, 1118 (Fed. Cir. 1998).  Similarity of overall appearance is an insufficient basis for a finding of infringement, unless the similarity embraces the points of novelty of the patented

design.  Id.  The points of novelty determination is a question of fact.  Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir. 2004).

I.      The '634 Patent

On appeal, Crown challenges the district court's summary judgment of noninfringement of the '634 patent, arguing that the court erred in its claim construction analysis.  Crown contends that the court erred by reading a "flat" chuck wall limitation into claim 1.  The court, according to Crown, mistakenly believed that only flat structures could be inclined at an angle.  Crown also alleges that the court improperly imported the "flat" limitation into the claims from the preferred embodiment and a process disclosed in the specification.  Finally, Crown asserts that the court erred by relying upon the lack of discussion regarding nonflat chuck walls in the prosecution history to justify its unduly narrow construction.

Anheuser responds with numerous arguments to support the district court's claim construction.  Anheuser initially argues that the dictionary definitions of the claim terms "inclined" and "axis" require flat chuck walls.  Next, Anheuser contends that because the '634 patent stresses the importance of using a frustoconical chuck to manufacture the can end, the claims must be limited to a flat chuck wall.[1]  Anheuser also asserts that Crown limited its claims to a flat chuck wall by not distinguishing its claims from the prior art during prosecution on that basis.  Finally, Anheuser contends that the testimony of one of the '634 patent's inventors that the patent's specification describes a can end with a flat chuck wall, confirms the court's construction.

---

[1]      A frustoconical chuck is a mechanical device with a flat cross section that stamps the shape of the chuck wall into the can end.

04-1195, -1188                    -7-

We agree with Crown that the district court erred in construing the claims to require a flat chuck wall. "Where a specification does not <u>require</u> a[n extraneous] limitation, that limitation should not be read from the specification into the claims." <u>E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.</u>, 849 F.3d 1430, 1433 (Fed. Cir. 1988). Here, there is no dispute that the claims do not expressly require flat chuck walls, and we do not find that the specification or the prosecution history expressly or implicitly require the chuck walls to be flat. Indeed, the patent explains that an objective of the invention is to develop a sufficiently strong can that uses less metal. '634 patent, col. 1:20-22; 1:54-65. This objective is accomplished by adjusting the chuck wall angle. <u>Id.</u> The patent does not indicate that the shape of the chuck wall is necessary to accomplish this goal. Thus, no basis exists for the court to import the "flat" limitation from the preferred embodiment into the claims.

Anheuser's arguments supporting the district court's construction are unpersuasive. We take each of Anheuser's arguments in turn. Anheuser's definition of the term "incline"—having a leaning or a slope usually from the vertical or horizontal— simply does not require a flat chuck wall. For example, steps of a stair are commonly said to incline at an angle, and there is no question that the steps are not flat.[2] The term "axis," also defined by Anheuser, does not relate to the shape of the chuck wall. Thus, the plain meaning of the claim terms does not require a flat chuck wall.

We also reject Anheuser's argument that the method of manufacture disclosed in the patent requires the chuck wall to be flat. The patent discloses that the method of

---

[2] This stair example also overcomes the district court's observation that only a flat chuck wall can incline at "an" angle. Like an arcuate-shaped chuck wall, the steps of a stair have multiple angles and slopes. Nonetheless, the steps have an angle of inclination.

manufacture relied upon by Anheuser is "a second aspect" of the invention, with the first aspect of the invention being the geometry of the can end itself. '634 patent, cols. 1:56-2:30. Because claim 1 is a product claim that is not limited to a particular method of manufacture, "we decline to superimpose a process limitation." Cordis Corp. v. Medtronic Ave, Inc., 339 F.3d 1352, 1357 (Fed. Cir. 2003) (citing Vanguard Prods. Corp. v. Parker Hannifin Corp., 234 F.3d 1370, 1372 (Fed. Cir. 2000) (holding that the limitation of a thin layer "integral therewith" described the product and did not designate a specific manufacturing process, and that a "method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process")).

Anheuser's reference to the prosecution history to support Crown's purported acquiescence to the court's construction of a flat chuck wall is also unavailing. A critical flaw in Anheuser's argument is that a flat chuck wall is not a basis of distinction between Crown's claims and the prior art. As we have construed the claims, they cover both flat and nonflat chuck walls.

Finally, Anheuser's reliance upon inventor testimony is misplaced. An inventor's testimony regarding the scope of his claims is not conclusive of the legal meaning of the claims. E.g., Bell & Howell DMP Co. v. Altek Sys., 132 F.3d 701, 706 (Fed. Cir. 1997). Nonetheless, we have reviewed the inventor testimony cited by Anheuser and do not find that it compels a construction of a flat chuck wall.

In the alternative, if we do not find that claim 1 requires a flat chuck wall, Anheuser contends that the claim is invalid under 35 U.S.C. § 112, ¶1 for lack of written description and enablement. Anheuser asserts that the written description of the '634

patent does not demonstrate that patentees were in possession of a can end with an arcuate-shaped chuck wall. Anheuser also asserts that in view of the absence of any disclosure of an arcuate chuck wall, claim 1 fails to satisfy the enablement requirement.

Whether a patent specification complies with the written description requirement is a question of fact that we review for substantial evidence. PIN/NIP, Inc. v. Platte Chem. Co., 304 F.3d 1235, 1243 (Fed. Cir. 2002). The issue of enablement is a matter of law that we review without deference; however, we review the factual underpinnings of enablement for substantial evidence. BJ Servs. Co. v. Halliburton Energy Servs., Inc., 338 F.3d 1368, 1371-72 (Fed. Cir. 2003).

We reject Anheuser's lack of written description argument. Anheuser's argument centering on whether there is a written description of an arcuate-shaped chuck wall misses the point. The relevant inquiry is whether a claim not limited to a flat chuck wall is described. We find that it is. Furthermore, Anheuser does not meet its burden of proving lack of written description by merely arguing that the patent's sole embodiment has a flat chuck wall. Anheuser cites Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473 (Fed. Cir. 1998), to support this written description argument, but the facts of Gentry Gallery are distinguishable from this appeal. In Gentry Gallery, the claims were invalid for lack of written description because the specification clearly identified the console as the only location for the controls but the claims did not contain such a limitation. Id. at 1479-80. Here, the written description of the '634 patent neither discussed the shape of the chuck wall nor required the chuck wall to be flat. Other than the reference to the patent's preferred embodiment, Anheuser can point to nothing in

the written description requiring the invention to be narrower than the scope of the claims.

We also reject Anheuser's argument of lack of enablement. "The enablement requirement is met if the description enables any mode of making and using the claimed invention." Engel Indus., Inc. v. Lockformer Co., 946 F.2d 1528, 1533 (Fed. Cir. 1991). As explained above, the claimed invention does not require an arcuate-shaped chuck wall. Moreover, it is not clear that a different mode of making and using the chuck wall applies depending upon whether it is flat or not. Because the '634 patent's written description indisputably enables a person of ordinary skill in the art to make and use the claimed invention with a chuck wall, irrespective of whether it is flat or nonflat, the enablement requirement is satisfied.

We have considered Anheuser's remaining arguments regarding the '634 patent and find them not persuasive.

II.    The '987 Patent

In challenging the district court's decision that SuperEnd does not infringe the '987 patent, Anheuser makes two arguments. First, Anheuser contends that the court erred by determining the points of novelty as a question of law instead of a question of fact. Secondly, Anheuser asserts that the court should have given it an opportunity to submit evidence and argument contesting the court's determination of the points of novelty. Although Anheuser raises valid points regarding the district court's determination of the points of novelty, we nonetheless affirm the decision. SuperEnd does not infringe the '987 patent under the substantial similarity test, even if Anheuser is correct concerning the district court's points of novelty characterization. We do not

reach these questions regarding the point of novelty test because we conclude that summary judgment was appropriate due to the absence of a genuine dispute as to any material fact concerning the substantial similarity test, and both tests must be satisfied.

As shown above, in figures 8 and 9 of the '987 patent, the claimed invention is characterized by, inter alia, a trapezoid-shaped recess area with the width of the tab side only slightly smaller than the width of the opening side, a relatively significant amount of space between the end of the tab and the edge of the recess, a relatively small amount of space between the edge of the central panel and the top of the chuck wall, and the chuck wall is almost perpendicular to the central panel.

Based on this partial claim construction, we conclude, as a matter of law, that SuperEnd does not infringe the '987 patent. The recess area of SuperEnd has a relatively smaller width on the tab side than in the '987 patent. That gives the recess area of SuperEnd a more pear-like shape compared to the more rectangle-like shape of the '987 patent. The space between the end of the tab and the edge of the recess in SuperEnd is also relatively smaller compared to the '987 patent. Finally, the appearance of the area between the edge of the central panel and the top of the chuck wall of SuperEnd is clearly distinguishable from that in the '987 patent. The chuck wall of SuperEnd is relatively longer and more angled compared to the '987 patent. These individual differences contribute to a substantial difference in the overall appearance between SuperEnd and the design of the '987 patent, and no reasonable fact-finder could conclude otherwise. Such a conclusion is compelled irrespective of the issue that Anheuser raises, i.e., whether the district court improperly evaluated the points of novelty issue as a matter of law. Its treatment of that issue was at most harmless error.

## CONCLUSION

We vacate the district court's order granting summary judgment of noninfringement of the '634 patent and we remand for further proceedings. We affirm the judgment of noninfringement of the '987 patent.

## Costs

Each party shall bear its own costs.