# United States Court of Appeals for the Federal Circuit

2006-1561

ARMINAK AND ASSOCIATES, INC. and HELGA ARMINAK,

> Plaintiffs/Counterclaim
> Defendants-Appellees,

and

ARMIN ARMINAK,

> Counterclaim Defendant-
> Appellee,

v.

SAINT-GOBAIN CALMAR, INC.
(now known as MeadWestvaco Calmar, Inc.),

> Defendant/Counterclaimant-
> Appellant.

Daniel C. DeCarlo, Lewis Brisbois Bisgaard & Smith, of Los Angeles, California, argued for the plaintiffs/counterclaim defendants-appellees and counterclaim defendant-appellee. With him on the brief were William C. Steffin and Isamu H. Lee. Of counsel was David N. Makous.

Roger D. Taylor, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Atlanta, Georgia, argued for defendant/counterclaimant-appellant. With him on the brief were Michael J. McCabe, II and Robert C. Stanley. On the principal brief were M. Kelly Tillery, Charles S. Marion, and Keith Lee, Pepper Hamilton LLP, of Philadelphia, Pennsylvania.

Appealed from: United States District Court for the Central District of California

Judge Cormac J. Carney

# United States Court of Appeals for the Federal Circuit

2006-1561

ARMINAK AND ASSOCIATES, INC. and HELGA ARMINAK,

Plaintiffs/Counterclaim
Defendants-Appellees,

and

ARMIN ARMINAK,

Counterclaim Defendant-
Appellee,

v.

SAINT-GOBAIN CALMAR, INC.
(now known as MeadWestvaco Calmar, Inc.),

Defendant/Counterclaimant-
Appellant.

_____

DECIDED:  September 12, 2007

_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA, <u>Circuit Judge</u>, and HOLDERMAN,<sup>*</sup> <u>Chief District Judge</u>.

HOLDERMAN, <u>Chief District Judge</u>.

Appellant Saint-Gobain Calmar, Inc. ("Calmar") appeals from the district court's order granting summary judgment in favor of Arminak & Associates, Inc. ("Arminak"), finding that the design of Arminak's "AA Trigger" shroud did not infringe Calmar's two design patents, U.S. Patents Nos. Des. 381,581 ("the '581 patent") and Des. 377,602 ("the

*          Honorable James F. Holderman, Chief Judge, United States District Court for the Northern District of Illinois, sitting by designation.

'602 patent"). <u>Arminak & Assoc., Inc. v. Saint-Gobain Calmar, Inc.</u>, 424 F. Supp. 2d 1188 (C.D. Cal. 2006). We affirm.

## I. <u>Background</u>

Calmar and Arminak are both in the business of selling trigger sprayers to producers of liquid household products. A trigger sprayer is a device that is attached atop the cap of a bottle containing liquid, with a tube extending from the trigger sprayer device into the liquid. When the trigger of the sprayer device is manually pulled back, liquid is drawn up the tube into the sprayer device and is dispersed as a spray or mist out of the device's nozzle. The outside cover of the top portion of the sprayer device behind the nozzle and above the trigger mechanism is called the shroud, which is typically made of a molded plastic design.

In 1997, the U.S. Patent and Trademark Office ("PTO") granted Calmar two design patents—the '581 and '602 patents—on two trigger sprayer shroud designs. Calmar thereafter produced a commercial embodiment of the '581 patent called the "ERGO" shroud. No commercial embodiment of the shroud design set forth in the '602 patent has been produced.

In 2004, Arminak began selling its "AA Trigger" sprayer with the accused shroud design. In October 2004, Calmar informed one of Arminak's customers that Calmar believed the shroud design of Arminak's AA Trigger sprayer infringed Calmar's '581 and '602 design patents. On November 16, 2004, Arminak filed a declaratory judgment action against Calmar in the United States District Court for the Central District of California seeking a declaratory judgment of noninfringement. Calmar counterclaimed, alleging infringement of its '581 and '602 design patents. Arminak filed an amended complaint adding allegations of patent invalidity and certain state law claims against Calmar. After a

period of pretrial discovery, Arminak moved for summary judgment on its declaratory judgment claim, asserting that Arminak's AA Trigger shroud's design does not infringe Calmar's patents. On March 20, 2006, the district court in a detailed opinion determined that the shroud of Arminak's AA Trigger does not infringe Calmar's '581 and '602 design patents. Arminak, 424 F. Supp. 2d at 1189-90. On May 9, 2006, the district court dismissed Calmar's patent infringement counterclaims, stayed the litigation as to Arminak's patent invalidity and state law claims, and entered judgment in Arminak's favor pursuant to Federal Rule of Civil Procedure 54(b).

In granting Arminak's motion for summary judgment of noninfringement on Arminak's declaratory judgment claim and dismissing Calmar's counterclaims, the district court initially construed the claims of Calmar's '581 and '602 design patents. The district court then found that the ordinary observer of the trigger sprayer shroud designs in question was not the retail consumer or purchaser of retail products sold in containers with trigger sprayer devices, but the buyer of trigger sprayers for a contract filler or an industrial purchaser up the stream of commerce from the retail purchaser. The district court further found that the ordinary observer of trigger sprayers would not be deceived by the similarities between Arminak's AA Trigger shroud's design and Calmar's patented shroud designs. Additionally, the district court found that the similarities between Arminak's AA Trigger shroud and the design of Calmar's patented shrouds do not stem from Calmar's two asserted points of design novelty over the prior art in the sprayer shroud field.

3

## II. Jurisdiction and Standard of Review

The district court's subject matter jurisdiction over Arminak's declaratory judgment action for patent noninfringement was granted by 28 U.S.C. § 1338(a). We have jurisdiction over Calmar's appeal of the district court's partial summary judgment pursuant to 28 U.S.C. § 1292(c)(2) and § 1295(a)(1).

We review a grant of summary judgment de novo, reviewing the record and drawing all reasonable inferences in the nonmovant's favor to determine whether there is a genuine issue as to any material fact. Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1353 (Fed. Cir. 1998).

## III. Calmar's Contentions of Error

Calmar asserts four primary bases for its appeal: (1) the district court erred by construing the claims of Calmar's patents too narrowly; (2) the district court erred in its identification of the industrial buyer, not the retail consumer, as the ordinary observer; (3) the district court erred in holding that no reasonable jury could find that the ordinary observer would be deceived by the similarities of the trigger sprayers' shroud designs in question; (4) the district court erred in holding that no reasonable jury could find the points of novelty of the patented designs to be present in Arminak's AA Trigger shroud's design. Each of Calmar's arguments supporting its contentions of error is discussed below, after a brief overview of the law governing design patents.

## IV. Overview of Design Patent Law

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir.

4

1993)). The chief limitation on the patentability of designs is that they must be primarily ornamental in character. If the design is dictated by performance of the article, then it is judged to be functional and ineligible for design patent protection. Best Lock Corp. v. Ilco Unican Corp., 94 F.3d 1563, 1566 (Fed. Cir. 1996).

> The elements of design patent infringement are set forth at 35 U.S.C. § 289:
>
> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction over the parties.

35 U.S.C. § 289 (emphases added). Accordingly, a design patent is infringed by the "unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof." Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998).

Similar to the infringement analysis of a utility patent, infringement of a design patent is evaluated in a two-step process. First, the court must construe the claims of the design patent to determine their meaning and scope. OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997). Design patents typically are claimed as shown in drawings. Claim construction by a court is adapted accordingly. Goodyear, 162 F.3d at 1116. The scope of the claim of a patented design "encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) (quoting Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-05 (Fed. Cir. 1996)).

2006-1561

Second, after construction of the patent's claims, the court is to compare the construed claims to the accused design. Elmer, 67 F.3d at 1577. Infringement of a design patent occurs if "the designs have the same general visual appearance, such that it is likely that the purchaser [(or the ordinary observer)] would be deceived into confusing the design of the accused article with the patented design." Goodyear, 162 F.3d at 1118. The patented and accused designs do not have to be identical in order for design patent infringement to be found. Contessa, 282 F.3d at 1376. In determining infringement of a design patent, the court "is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." Id. at 1379 (emphasis added).

The comparison of the patented and accused designs involves two separate tests, both of which must be satisfied to find infringement: the "ordinary observer" test and the "point of novelty" test. Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir. 2004). The "ordinary observer" test was first enunciated by the United States Supreme Court in Gorham Manufacturing Co. v. White, 81 U.S. 511 (1871), which held that:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Id. at 528. In a separate and distinct inquiry, the "point of novelty" test requires proof that the accused design appropriated the novelty which distinguishes the patented design from the prior art. Egyptian Goddess, Inc. v. Swisa, Inc., No. 2006-152, 2007 WL 2439541, at *2 (Fed. Cir. Aug. 29, 2007) (citing Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444

6

(Fed. Cir. 1984)). Both the ordinary observer test and point of novelty test are factual inquiries. Bernhardt, 386 F.3d at 1383.

V. Discussion of Calmar's Arguments

**A. The District Court's Detailed Claim Construction**

Calmar argues that the district court erred by construing the claims of the patents-in-suit too narrowly, improperly focusing on and describing in minute detail the ornamental features of Calmar's patent rather than simply describing in words what is shown in their drawings. Based on the allegedly "too narrow" claim construction, the district court, according to Calmar, then improperly engaged in a "side-by-side, element-by-element comparison of the minute details of and differences between the patented designs and the AA Shroud." Appellant's Br. at 67.

The district court in this case performed the requisite task of claim construction by describing each of the drawings of Figures 1 through 5 in each of the two Calmar patents-in-suit. In doing so, the district court was careful to point out that the patented design did not include the nozzle, trigger, or closure cap. The district court also carefully noted that, to overcome the PTO's earlier rejection of the '581 patent application as not patentably distinct from the preceding Calmar '602 patent and to obtain the PTO's issuance of the '581 patent on July 29, 1997, Calmar filed a terminal disclaimer under 37 C.F.R. § 1.321(b). Calmar's disagreement with the district court's claim construction is essentially that it was too detailed. Our case law does not prohibit detailed claim construction of design patent drawings. It merely disapproves claim construction that goes beyond the novel, nonfunctional ornamental features visually represented by the claimed drawings, Elmer, 67 F.3d at 1577, or that fails to encompass the claimed ornamental features of the design as a

7

whole.  Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1371 (Fed. Cir. 2006).  The district court's meticulous and accurate description of Figures 1 through 5 of each of Calmar's patents-in-suit did not constitute error.  The district court's claim analysis demonstrated the proper consideration of the claimed designs as a whole.

**B.    The District Court's Identification of the Ordinary Observer**

A question that is central to this case, and every design patent case, is the identity of the "ordinary observer" of the design at issue, which in this case is the design of trigger sprayer shrouds.  This test requires an objective evaluation of the question of whether a hypothetical person called the "ordinary observer" would find substantial similarities between the patented design and the accused design, so as to be deceived into purchasing the accused design believing it is the patented design.  Gorham, 81 U.S. at 528.

Calmar argues that the appropriate "ordinary observer" in this case is the retail consumer who purchases the retail product that incorporates the sprayer shroud, such as the retail purchaser of a bottle of liquid window cleaner with a trigger sprayer device attached to the bottle's cap and a tube extending into the liquid to extract the liquid from the bottle as a spray during retail use.  If the ordinary observer is found to be the retail consumer that purchases the shroud of the trigger sprayer device as it is incorporated into a retail product, then it is much more likely that the ordinary observer would find substantial similarities between the patented and accused designs sufficient to be deceived into thinking that Arminak's AA Trigger shroud is one of the patented designs.

The district court disagreed with Calmar and found that the "ordinary observer" of trigger sprayer shrouds is not the retail consumer, but the purchaser of trigger sprayer mechanisms for assembly and incorporation into the product that is sold to retail

8

consumers. The record clearly shows that Calmar never sold any of its patented shrouds directly to retail consumers. <u>Arminak</u>, 424 F. Supp. 2d at 1198. If the ordinary observer is the contract buyer or industrial purchaser of trigger sprayers, then the undisputed material facts in the record establish that such a purchaser would not find substantial similarity between the patented and accused shrouds, and therefore would not be deceived into thinking that Arminak's AA Trigger shroud is one of the patented designs. <u>Id.</u> at 1201-02.

The Supreme Court's <u>Gorham</u> opinion, which dealt with an accused design's infringement of a design patent on silverware handle designs, expressly excluded experts from the category of persons who are ordinary observers. Under the facts of <u>Gorham</u>, it was "the observation of a person versed in designs in the particular trade in question—of a person engaged in the manufacturer or sale of articles containing such designs—of a person accustomed to compare such designs one with another, who sees and examines the articles containing them side by side," <u>id.</u> at 527, that was explicitly rejected by the Supreme Court.

The Supreme Court in <u>Gorham</u> contrasted this group of expert examiners, whose observations it rejected, with "ordinary observers," who it described as people possessing "ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." <u>Id.</u> at 528. The Court emphasized that "[i]t is persons of this latter class who are the principle purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be . . . the patentees are injured, and that advantage of a market which the patent was granted to secure is destroyed." <u>Id.</u> To be effective, design patent protection must focus upon

9

observations "by ordinary observers, by those who buy and use" the article bearing the design in question.  Id.

The unanswered question remaining after Gorham is whether these "ordinary observers" of which the Supreme Court spoke can be commercial or industrial buyers of designed items that are used as component parts assembled into a retail product. Although we have not squarely addressed that question until now, in the Goodyear case (which dealt with patented tire tread designs commercially embodied on Goodyear's truck tires) we stated that the focus of the ordinary observer test is "on the actual product that is presented for purchase, and the ordinary purchaser of that product."  162 F.3d at 1117 (emphasis added).  There we found that the ordinary observer of the patented tread designs was a truck driver and a truck fleet operator because the products containing the patented and accused designs were tires used on trucks, even though the design patent at issue was not limited to truck tires.

In Keystone, we found that the ordinary observers of patented wall blocks were "visitors to trade shows."  997 F.2d at 1451.  We made that finding even though the accused wall blocks, when stacked to form a wall, were substantially similar to a wall of patented wall blocks.  We held that the visual observation of the ordinary observer should focus only on the unassembled "patented design" of the individual block, not the blocks that were stacked together as "an assembled wall."  Id. at 1451.  Accordingly, we concluded in Keystone that "the 'ordinary purchaser' for the purpose of the block design patent is a purchaser of the patented block," not a purchaser of an assembled wall.  Id.

10

In 1933, when the regional United States Courts of Appeals still had jurisdiction over patent law issues, the Sixth Circuit noted the substantial number of prior art design patents in the field of automobile electric cigar lighters and ashtrays. Adhering to the precedent of Gorham v. White, the court held:

> The ordinary observer is not any observer, but one who, with less than the trained facilities of the expert, is "a purchaser of things of similar design," or "one interested in the subject" . . . one who, though not an expert, has reasonable familiarity with such objects [as an automobile ash tray and cigar lighter], and is capable of forming a reasonable judgment when confronted with a design therefor as to whether it presents to his eye distinctiveness from or similarity with those which have preceded it.

Applied Arts Corp. v. Grand Rapids Metalcraft Corp., 67 F.2d 428, 430 (6th Cir. 1933).

More recently, two district court opinions found that institutional purchasers, not end-user consumers, were the appropriate persons to be considered ordinary observers when the design-patented item is a component of the product that is sold. E.g. Spotless Enters., Inc. v. A & E Prods. Group, L.P., 294 F. Supp. 2d 322, 347 (E.D.N.Y. 2003) (design patent for lingerie hangers; "ordinary observer" was not the general public, but the commercial buyer for garment manufacturers, who then resold garments on the hangers to retail stores); Puritan-Bennett Corp. v. Penox Techs., Inc., No. IP02-0762-C-M/S, 2004 W.L. 866618, at *26 (S.D. Ind. Mar. 2, 2004) (design patent for portable liquid oxygen tanks; "ordinary observer" "must include medical equipment distributors, at the least, and possibly, hospitals and physicians" who provide the tanks by prescription to patients), aff'd 121 F. App'x 397 (Fed. Cir. 2005).

Calmar cites to our Contessa opinion in support of its contention that in this case the ordinary observer must be the retail consumer. In Contessa, we stated:

> for purposes of design patent infringement, the "ordinary observer" analysis is not limited to <u>those features</u> visible during only one phase or portion of the normal use lifetime of an accused product. Instead, the comparison must extend to <u>all ornamental features</u> visible during normal use of the product, <u>i.e.</u>, "beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article."

282 F.3d at 1380 (citations omitted) (emphases added). We disagree with Calmar that the quoted language from <u>Contessa</u> supports Calmar's contention that the retail consumer must be the ordinary observer of trigger sprayer shrouds. This quoted language does not describe who the ordinary observer is. Rather, it explains what "features" of the patented design must be included as "observed" in the ordinary observer test—or in other words, what features of the patented design the ordinary observer is to examine in determining if there is substantial similarity with an accused design.

Calmar also argues that the purchasers of the shrouds themselves (who Calmar repeatedly refers to as "the sophisticated purchaser who is well-versed in the trade") do not "use" the shrouds and therefore cannot be the ordinary observer. Appellant's Br. at 30-31. Again, we disagree with Calmar. The industrial purchaser of the trigger sprayer shrouds for manufacturing assembly does indeed "use" the shrouds—to cover trigger sprayer mechanisms that are assembled with the bottle, the bottle's cap, the liquid contained in the bottle, and the label on the bottle, all of which assembled together create the retail product. Consequently, the purchaser of the patented and accused designs in this case is the purchaser of one of a retail product's component parts that is thereafter assembled with other parts to make the retail product. To hold that such a purchaser is the appropriate hypothetical ordinary observer fits squarely with our precedent that the ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision

2006-1561

when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent.

We agree, therefore, with the district court that the ordinary observer of the sprayer shroud designs at issue in this case is the industrial purchaser or contract buyer of sprayer shrouds for businesses that assemble the retail product from the component parts of the retail product bottle, the cap, the sprayer tube, the liquid, the label, and the trigger sprayer device atop the cap, so as to create a single product sold to the retail consumer. Here, the patented design is only the shroud of the sprayer device. The three physical exhibits submitted for examination on appeal are trigger sprayer devices attached to bottle caps with plastic tubes for insertion into contained liquid, not the bottles, not the liquid into which the sprayer tube is inserted during normal use, and not the label of the retail product. Accordingly, we hold that the ordinary observer of the trigger sprayer shrouds in this case is, as the district court found, the contract or industrial buyer for companies that purchase the stand-alone trigger sprayer devices, not the retail purchasers of the finished product.

## C.    The District Court's Application of the Ordinary Observer Test

In applying the ordinary observer test, a court is to compare the construed claims to the accused design to determine whether "the designs have the same general visual appearance, such that it is likely that the purchaser [(or the ordinary observer)] would be deceived into confusing the design of the accused article with the patented design." Goodyear, 162 F.3d at 1118. Specifically, the question to be addressed in applying the ordinary observer test is whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design. Gorham, 81 U.S. at 28. Under our case law, the ordinary observer test requires, as the district court recognized, the

13

comparing of the accused and patented designs from all views included in the design patent, not simply those views a retail customer seeking to buy would likely see when viewing the product at the point of sale. Contessa, 282 F.3d at 1379.

The record establishes that the ordinary observer would not be deceived by the similarities between Arminak's AA Trigger shroud and Calmar's patented sprayer shroud designs. Indeed, Calmar's own expert conceded that "[i]t would be a significant exception for a corporate buyer purchasing the Arminak trigger sprayer to confuse the Calmar ERGO Shroud and the Arminak AA shroud" and that "[t]here is essentially no question that a corporate buyer purchasing these trigger sprayers with these specific shrouds would be able to tell the difference easily." Arminak, 424 F. Supp. 2d at 1201-02. A former Calmar customer service manager also testified that most of Calmar's customers "wouldn't be fooled for a second." Id. at 1201. We agree with the district court that the undisputed material facts establish that the ordinary observer would not be deceived by the similarities between Arminak's AA Trigger shroud and Calmar's patented sprayer shroud designs.

**D.     The District Court's Application of the Point of Novelty Test**

The point of novelty test is the second test that must be satisfied for an accused design to infringe a design patent. In applying the point of novelty test, a court compares the construed claims to the accused design to determine whether the accused design has "appropriated" the points of novelty from the patented design. See Litton, 728 F.2d at 1444. Where the art in the field of a particular design is crowded, we must construe the range of equivalents narrowly. Id.

The record in this case includes a number of prior art examples of trigger sprayer shrouds' patented designs.

14



**Des. 327,222**
filed 1990
issued 6/23/92



**Des. 326,707**
filed 1990
issued 6/2/92



**Des. 357,408**
filed 1993
issued 4/18/95



**Des. 358,198**
filed 1994
issued 5/9/95



**Des. 366,692**
filed 1994
issued 1/30/96



**Calmar's '602 Patent**
filed 1995
issued 1/28/97



**Calmar's '581 Patent**
filed 1995
issued 7/29/97

Calmar presented two points of novelty to the district court that Calmar asserted distinguished its patented designs from the prior art. The district court "concur[ed] with Calmar's characterization of the [two] points of novelty in the '581 and '602 Patents":

1.    There is a prominent horizontal line extending along each side [of the shroud], parallel to the top surface of the shroud, all the way to the sloped rear surface; and

2.    The sides of the shroud first go straight downwardly, and then, as viewed from the rear, at the horizontal lines on each side, bulge outwardly in a bulbous fashion, to the bottom rear of the shroud.

Arminak, 424 F. Supp. 2d at 1204. We examine each in turn.

2006-1561

### 1. "A Prominent Horizontal Line"

With respect to Calmar's assertion as to the first point of novelty, "a prominent horizontal line" extending along the shroud's sides appears in both patented designs.



Prominent horizontal line

**Calmar's** '581 patent

**Calmar's** '602 patent

The district court found that the prominent horizontal line of Calmar's patented designs was not appropriated by Arminak's AA Trigger shroud because "the [horizontal] line on the AA Trigger is intersected by a slanted line defining a raised surface," id. at 1204-05, beneath the horizontal line and above the trigger mechanism.



Slanted line

Raised surface

**Arminak's** AA Trigger Shroud

We agree with the district court. Although the top edge of Arminak's AA Trigger shroud's raised surface is beneath a horizontal line that extends along the shroud's side to the back of the shroud, the rear edge of the raised surface is defined by a downwardly slanted line that intersects Arminak's AA Trigger shroud's horizontal line near the middle of the shroud's side. The raised surface and intersecting slanted line below Arminak's AA Trigger shroud's horizontal line results in a different overall design appearance than Calmar's asserted first point of novelty of its patented designs.

16

## 2.     "Bulge Outwardly in a Bulbous Fashion"

With respect to Calmar's asserted second point of novelty, the sides of the shroud that "bulge outwardly in a bulbous fashion, to the rear of the shroud," the district court found that Arminak's AA Trigger shroud did not appropriate this point of novelty because, similar to several prior art patents, Arminak's AA Trigger shroud's sides "instead flare out in straight lines before converging slightly inward toward the bottom of the shroud."  Id. at 1204.  The district court cited to the '222 patent's drawings in support of its finding

> that the AA Trigger does not contain the "bulbous sides" point of novelty Calmar claims.  The AA Trigger's flared appearance, when viewed from the back, is similar to the back view disclosed in the '222 Patent. . . . Indeed, any similarity that might appear between the back portion of the AA Trigger and the back drawings of the patented designs is no greater than the similarity between the back views claimed in the patented designs and the back view shown in the '222 Patent.

Id. at 1204 n.14.

The similarities and differences between the back of the patented designs, the prior art, and Arminak's AA Trigger shroud are illustrated below:

    

| Calmar's '581 Patent | Calmar's '602 Patent | '222 Patent | '198 Patent | Arminak's |
|---|---|---|---|---|
| filed 1995 issued 7/29/97 | filed 1995 issued 1/28/97 | filed 1990 issued 6/23/92 | filed 1994 issued 5/9/95 | AA Trigger shroud |

Arguably, the "bulbous" "bulge" of the sides of the patented designs are "novel" when compared to the prior art.  We agree with the district court that based on the "bulbous" sides as depicted in the back views of Calmar's patents' drawings, no reasonable jury could

17

find that the back of Arminak's AA Trigger shroud, which is almost identical to the '198 and '222 prior art patents, appropriates Calmar's second point of novelty.

Our conclusion is that Arminak's AA Trigger shroud does not appropriate the two points of novelty from the prior art as Calmar contends. We agree with the district court that no reasonable jury could find that Calmar's points of novelty exist in Arminak's AA Trigger shroud.

Calmar contends that the district court in its analysis improperly merged the point of novelty test with the ordinary observer test, which we have held is "legal error." Contessa, 282 F.3d at 1377. We disagree with Calmar's contention. The district court's opinion is clear that its point of novelty analysis was confined to determining Calmar's points of novelty and whether Arminak's AA Trigger shroud appropriated Calmar's points of novelty. Calmar implies that the district court should have limited its discussion of the points of novelty comparison to only the exact words Calmar used to describe its two points of novelty and that the district court should not have looked at Calmar's patents' Figures. The relevant inquiry is not to analyze the words used by the patent owner to describe a particular design feature after the issuance of the patent, but whether the design feature, as it appears in the Figures of the patent as issued, is found in the accused design.

Calmar also implies that it was improper for the district court to do a detailed side-by-side comparison between the patented design and the accused design. Calmar cites no authority for this contention because there is none. To establish infringement in a design patent case, the district court is required to compare the patented design with the accused design. See Elmer, 67 F.3d at 1577. Without comparing the patented design with the accused design, there was no way for the district court to determine whether an ordinary

18

observer would find the accused design deceptively similar and whether the accused design appropriated points of novelty. Therefore, based on our de novo review, we find that the district court applied both judicially articulated design patent infringement tests in the proper manner. Neither test is satisfied in this case.

VI. <u>Conclusion</u>

For the foregoing reasons, the district court's judgment is affirmed.

<strong>AFFIRMED.</strong>

No costs.